TERESA A. BLASBERG (State Bar No. 105473)
BLASBERG & ASSOCIATES
526 N. Juanita Ave
Los Angeles, California 90004
Telephone: (213) 239-0364
Facsimile: (323) 661-2940

**Attorneys for Arkland Investment, LLC**

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 2:09-bk-46058-AA |
| ARKLAND INVESTMENT, LLC, | DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION FOR ARKLAND INVESTMENT, LLC |
| Debtor. | |
| | Date: May 26, 2010 |
| | Time: 11:30 a.m. |
| | Place: Courtroom 1375 |
| | 255 E. Temple Street, Los Angeles, CA 90012 |

1

FINPLAN 06/2006

DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION FOR
ARKLAND INVESTMENT, LLC

FINPLAN 06/2006

# TABLE OF CONTENTS

TABLE OF CONTENTS...............................................1

I.    INTRODUCTION..............................................2

II.   GENERAL DISCLAIMER AND VOTING PROCEDURE...................2

III.  WHO MAY OBJECT TO CONFIRMATION OF THE PLAN...............3

IV.   WHO MAY VOTE TO ACCEPT OR REJECT THE PLAN................3

V.    VOTES NECESSARY TO CONFIRM THE PLAN......................4

VI.   INFORMATION REGARDING VOTING IN THIS CASE................5

VII.  DESCRIPTION OF DEBTOR'S PAST AND FUTURE BUSINESS AND EVENTS
      PRECIPITATING BANKRUPTCY FILING..........................5

VIII.    CRITICAL PLAN PROVISIONS .............................9

IX.   DESCRIPTION AND TREATMENT OF CLAIMS......................9

X.    SOURCE OF MONEY TO PAY CLAIMS AND INTEREST-HOLDERS......20

XI.   FINANCIAL RECORDS TO ASSIST IN DETERMINING WHETHER PROPOSED
      PAYMENT IS FEASIBLE    ........ERROR! BOOKMARK NOT DEFINED.

XII.  ASSETS AND LIABILITIES OF THE ESTATE....................20

XIII.    TREATMENT OF NONCONSENTING CLASSES ..................20

XIV.  TREATMENT OF NONCONSENTING MEMBERS OF CONSENTING
      CLASS (CHAPTER 7 LIQUIDATION ANALYSIS)..................21

XV.   FUTURE DEBTOR...........................................26

XVI.  SALE OR TRANSFER OF PROPERTY; ASSUMPTION OF CONTRACTS AND
      LEASES; OTHER PROVISIONS................................23

XVII.    BANKRUPTCY PROCEEDINGS ..............................23

XVIII.  TAX CONSEQUENCES OF PLAN ............................23

XIX.  EFFECT OF CONFIRMATION OF PLAN..........................25

XX.   DECLARATION IN SUPPORT OF DISCLOSURE STATEMENT AND PLAN..26

1

FINPLAN 06/2006

## I.    INTRODUCTION

On December 20, 2009, Arkland Investment, LLC ("Debtor") filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code ("Code").    The document you are reading is <u>both</u> the Plan of Reorganization ("Plan") and the Disclosure Statement. Debtor ("Proponent") has proposed the Plan to treat the claims of the Debtor's creditors and, if applicable, the interests of shareholders or partners.    A disclosure statement describes the assumptions that underlie the Plan and how the Plan will be executed.    The Bankruptcy Court ("Court") has approved the form of this document as an adequate disclosure statement, containing enough information to enable parties affected by the Plan to make an informed judgment about the Plan.    The Court has not yet confirmed the Plan, which means the terms of the Plan are not now binding on anyone.

The Proponent has reserved _____ in Courtroom 1375 for a hearing to determine whether the Court will confirm the Plan.

Any interested party desiring further information should contact: Teresa A. Blasberg, Blasberg & Associates, 526 N. Juanita Ave, Los Angeles, CA 90004; Phone: (213) 239-0364; Fax: (323) 661-2940; email: tablasberg@earthlink.net.

## II.    GENERAL DISCLAIMER AND VOTING PROCEDURE

PLEASE READ THIS DOCUMENT, INCLUDING THE ATTACHED EXHIBITS, CAREFULLY. IT EXPLAINS WHO MAY OBJECT TO CONFIRMATION OF THE PLAN. IT EXPLAINS WHO IS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN. IT ALSO TELLS ALL CREDITORS AND ANY SHAREHOLDERS OR PARTNERS WHAT TREATMENT THEY CAN EXPECT TO RECEIVE UNDER THE PLAN, SHOULD THE PLAN BE CONFIRMED BY THE COURT.

THE SOURCES OF FINANCIAL DATA RELIED UPON IN FORMULATING THIS DOCUMENT ARE SET FORTH IN THE DECLARATION IN SECTION XX BELOW.    ALL REPRESENTATIONS ARE TRUE TO THE PROPONENT'S BEST KNOWLEDGE.

NO REPRESENTATIONS CONCERNING THE DEBTOR THAT ARE INCONSISTENT WITH ANYTHING CONTAINED HEREIN ARE AUTHORIZED EXCEPT TO THE EXTENT, IF AT ALL, THAT THE COURT ORDERS OTHERWISE.

After carefully reviewing this document and the attached exhibits, please vote on the enclosed ballot and return it in the enclosed envelope.

The Proponent has reserved a hearing date for a hearing to determine whether the Court will confirm the Plan.    Please refer to

Section I above for the specific hearing date.  If, after receiving the ballots, it appears that the Proponent has the requisite number of votes required by the Code, the Proponent will file a motion for an order confirming the Plan.

The Motion shall at least be served on all impaired creditors and partners or shareholders who reject the Plan and on the Office of the United States Trustee.  Any opposition to the Motion shall be filed and served on the Proponent no later than eleven days prior to the hearing date.  Failure to oppose the confirmation of the Plan may be deemed consent to the Plan's confirmation.

## III. WHO MAY OBJECT TO CONFIRMATION OF THE PLAN

Any party in interest may object to confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or reject the Plan.

## IV.  WHO MAY VOTE TO ACCEPT OR REJECT THE PLAN

It requires both an allowed and impaired claim or interest in order to vote either to accept or reject the Plan.  A claim is defined by the Code to include a right to payment from the Debtor.  An interest represents an ownership stake in the Debtor.

In order to vote a creditor or interest-holder must first have an allowed claim or interest. With the exceptions explained below, a claim is allowed if proof of the claim or interest is properly filed before any bar date and no party in interest has objected, or if the court has entered an order allowing the claim or interest. Please refer to Section VI below for specific information regarding bar dates in this case.

Under certain circumstances a creditor may have an allowed claim even if a proof of claim was not filed and the bar date for filing a proof of claim has passed.  A claim is deemed allowed if the claim is listed on the Debtor's schedules and is not scheduled as disputed, contingent, or unliquidated.  Exhibit A contains a list of claims that are not scheduled as disputed, contingent, or unliquidated.

Similarly, an interest is deemed allowed if it is shown on the list of equity security holders filed by the Debtor with the court and is not scheduled as disputed.

In order to vote, an allowed claim or interest must also be impaired by the Plan.

3

<u>Impaired creditors</u> include those whose legal, equitable, and contractual rights are altered by the Plan, even if the alteration is beneficial to the creditor.  A contract provision that entitles a creditor to accelerated payment upon default does not, however, necessarily render the claimant impaired, even if the Debtor defaulted and the Plan does not provide the creditor with accelerated payment.  The creditor is deemed unimpaired so long as the Plan cures the default, reinstates the maturity of such claim as it existed before default, compensates for any damages incurred as a result of reasonable reliance upon the acceleration clause, and (except for a default arising from failure to operate a nonresidential lease subject to 11 U.S.C.A. § 365 (b)(1)(A) (West Supp. 2006)) compensates for any actual pecuniary loss incurred as a result of any failure to perform a non-monetary obligation.

<u>Impaired interest-holders</u> include those whose legal, equitable, and contractual rights are altered by the Plan, even if the alteration is beneficial to the interest holder.

There are also some types of claims that the Code requires be treated a certain way.  For that reason they are considered unimpaired and therefore holders of these claims cannot vote.

<u>To summarize, there are two prerequisites to voting: a claim or interest must be both allowed and impaired under the Plan.</u>
If a creditor or interest-holder has an allowed and impaired claim or interest, then he or she may vote either to accept or reject the Plan (unimpaired claimants or interest-holders are deemed to have accepted the Plan).  Impaired claims or interests are placed in classes and it is the class that must accept the Plan.  Members of unimpaired classes do not vote, although as stated above, they may object to confirmation of the Plan.  Even if all classes do not vote in favor of the Plan, the Plan may nonetheless be confirmed if the dissenting classes are treated in a manner prescribed by the Code.  Please refer to Section VI below for information regarding impaired and unimpaired classes in this case.

Section IX sets forth which claims are in which class.  Secured claims are placed in separate classes from unsecured claims.  Fed. R. Bankr. P. 3018(d) provides: "A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim shall be entitled to accept or reject a plan in both capacities."

**V.    VOTES NECESSARY TO CONFIRM THE PLAN**
The Court may confirm the Plan if at least one noninsider impaired class of claims has accepted and certain statutory requirements are met as to both nonconsenting members within a consenting class and as to dissenting classes.  A class of claims has accepted the Plan when more than one-half in number and at least two-thirds in amount

4

of the allowed claims actually voting, vote in favor of the Plan. A class of interests has accepted the Plan when at least two-thirds in amount of the allowed interests of such class actually voting have accepted it.  It is important to remember that even if the requisite number of votes to confirm the Plan are obtained, the Plan will not bind the parties unless and until the Court makes an independent determination that confirmation is appropriate.  That is the subject of any upcoming confirmation hearing.

## VI.   INFORMATION REGARDING VOTING IN THIS CASE

The bar date for filing a proof of claim in this case was March 30, 2010.

The bar date for objecting to claims has not been set.

In this case the Proponent believes that classes Two, Four, Five, Six and Seven are impaired and therefore entitled to vote, however, the Proponent reserves the right to seek an order of the Court designating any vote as having been cast in bad faith, pursuant to 11 U.S.C. §1126(e).  Classes Three and Eight are unimpaired and therefore does not vote. A party that disputes the Proponent's characterization of its claim or interest as unimpaired may request a finding of impairment from the Court in order to obtain the right to vote.

Ballots must be received by the Proponent, addressed to Teresa A. Blasberg, Blasberg & Associates, 526 N. Juanita Ave, Los Angeles, CA 90004 by _____ .

## VII. DESCRIPTION OF DEBTOR'S PAST AND FUTURE BUSINESS AND EVENTS PRECIPITATING BANKRUPTCY FILING

The Debtor is a Nevada limited liability company, and is not a small business debtor as defined in 11 U.S.C.A. § 101(51D) (West Supp. 2006).

Debtor conducted 100% of its business activity in Los Angeles, CA since 2004.

What follows is a brief summary of the dates and circumstances that led Debtor to file bankruptcy.

The Debtor purchased the property located at 2700 Wilshire Blvd. in Los Angeles (the "Wilshire Property") on October 31, 2005 from the American Red Cross (which was using it as an office building) for $10.6 million in cash, in order to develop the property for a more productive use.  One month later, the Debtor obtained a $6 million line of credit from United Commercial Bank (now East West Bank) secured by the property (the "UCB Loan").  Funds from the credit

5

line were used to (1) partially buy out two of Arkland's then members (Sung Lee and Steve Yi) at $2,258,003 each, resulting in a proportionate increase in all the remaining members' interests; (2) make interest payments on the UCB Loan; and (3) purchase a 36.6% interest in Envision Foods, LLC (which owns 19 Jack in the Box franchises) for $3.21 million.

Between 2006 and 2008, the Debtor began to strip the interior of the building, completed asbestos removal, and obtained the necessary permits for a spa business.  All of Wi Spa's members contributed substantial funds to complete the development; ultimately, the Jae Woo and Jae Hee Kim (60% owners of Arkland) did not want to participate in the spa project, although they did not object to the remaining members completing the development.  The remaining remembers, Stuart Whang, Choong Yea and David Chang formed Wi Spa, LLC on August 25, 2008, and Arkland and Wi Spa entered into a lease for the premises, commencing September 1, 2008.  Construction of the tenant improvements began in December, 2008, and Wi Spa opened for business in November of 2009.

On July 25, 2006, Arkland purchased land located at 2950-2990 West 6th Street and 601 S. Commonwealth Ave in Los Angeles (the "6th & Virgil Property") for $19 million using cash and seller financing, for the purpose of developing the land for use as a hotel and shopping center.  In October of 2006, Arkland borrowed $10.5 million from Universal Bank, to take out the original seller financing and for working capital for the development (the "Universal Bank Loan").  The Universal Bank Loan was funded by a syndicate of three banks: Universal Bank, First Standard Bank and California Center Bank, and just as the loan was about to close, Universal Bank demanded additional collateral in the form of a deed of trust against the Wilshire Property. In January of 2008, Universal Bank refinanced the loan, and extended an additional $250,000 of credit secured by the 6th & Virgil Property.  In February of 2009, permits were granted for a high-rise tower with 31,000 square of feet of retail, restaurant and banquet space, 192 hotel rooms and full-service residences, and 165 residential condos.

In January of 2005, Wil-Tower LLC purchased the Wilshire Hoover Property for $13 million, financed in part by a $7 million loan from First Credit Bank.  The Debtor was not involved in the purchase, nor was it affiliated with Wil-Tower LLC at that time. Concord Wilshire Hoover, LLC was the managing member, and the members were Concord Wilshire Hoover, LLC (30.61%), the Kims (27.71%), Stuart Whang (2.72%), Choong Yea (5.67%), and the remaining 33.29% was owned by parties unrelated to the Debtor.

In 2006 and 2007, Arkland purchased a 9.99% interest in Wil-Tower LLC for $1.16 million, only $320,000 of which was financed.  Wil-

6

Tower LLC borrowed $13 million from HIC Acceptance to refinance existing loans on the property, and to purchase an additional 20,000 square feet of contiguous land, and the members, including Arkland, guaranteed the loan.  During 2007, two escrows were opened to sell the property for $40 million and $30 million, respectively, but the sales did not close.  Even in 2008, when the real estate market began to decline, the Wilshire Hoover Property still had an appraised value of $28 million, but development was delayed due to an environmental condition that was not cleared until March of 2008.

Between 2005 and 2007, the Debtor had two sources of cash: (1) $100,000 per month  interest payments on a $10 million promissory note from the purchaser of land Arkland had owned in Las Vegas and (2) $20,000 per month in dividends from Envision Foods, LLC.  After the note was paid in 2007, the Debtor was no longer receiving the monthly interest  payments, but continued to be able to pay its debts until the spring of 2008.  The HIC Acceptance loan secured by the Wilshire Hoover Property matured in August of 2008, and HIC presses Wil-Tower to reduce the loan from $13 million to $10 million.  Meanwhile, investment capital began to dry up in 2008, and by 2009, it was impossible to find funding to complete the Wilshire Hoover development, and the property did not generate any cash flow to service the debt. The Debtor and some of the other members of Wil-Tower responded to the initial cash calls, but other Wil-Tower members did not, and the property was lost to foreclosure on September 15, 2009.

The 6th & Virgil Property was in a similar undeveloped state, and was only generating $12,000 per month in rent from the parking lot on the land, which for a time was used to pay interest on a loan from Song Pil Hong.  Wi Spa was not paying any rent, and the Debtor no longer had the cash flow to service the debt on both the Wilshire Property and the 6th & Virgil Property.  As with the Wilshire Hoover Property, there was no investment capital available to complete the development, and by the spring of 2009, the Debtor was out of cash.

Jae Woo Kim became a co-manager of the Debtor with David Chang on January 20, 2009.  The Debtor's Operating Agreement was amended and restated to require unanimous action by the two managers, but did not contain any provision for resolving any deadlock that might arise.  The Kims were not willing to invest the funds needed to save 6th & Virgil, nor did Mr. Kim agree to seek bankruptcy protection for the Debtor, and on August 8, 2009, the 6th & Virgil Property was lost to foreclosure by Mr. Hong.

Beginning in June of 2009, Mr. Whang and Mr. Yea began to implement a strategy to gain control and then ownership of the Wilshire Property.  Initially, Mr. Whang and Mr. Yea attempted to negotiate

with the Kims to purchase the building from the Debtor, but no agreement was reached. In July of 2009, Mr. Whang and Mr. Yea opened an escrow to purchase the Universal Bank note (secured by a first lien against the 6th & Virgil Property, and a second lien against the Wilshire Property) through SW Holdings, LLC. During this entire period until the petition was filed, Mr. Chang attempted through informal communications and written legal demands to Mr. Whang and Mr. Yea to collect rent from Wi Spa on the Debtor's behalf, in order to resume payments to Universal Bank; the bank had recorded a notice of default on August 11, 2009, and funds were needed cure the arrearages and prevent a foreclosure of the Wilshire Property. They ignored the demands, including Mr. Chang's insistence that Wi Spa pay property taxes and contractors as required by Wi Spa's lease with the Debtor.

The Universal Bank Loan was made by a syndicate of three banks, Universal Bank, First Standard Bank, and California Center Bank. First Standard Bank would not agree to the proposed purchase of the loan, and by November of 2009, it was clear that the purchase would not close. Meanwhile, Universal Bank had noticed a foreclosure sale of both the Wilshire Property and the 6th & Virgil Property for December 21, 2009. Although Arkland no longer had title to the 6th & Virgil Property because it had been foreclosed by a junior lienholder, the property still secured The Debtor's obligations to Universal Bank. Although Wi Spa still refused to pay rent, taxes and debts that had resulted in mechanics' liens on the Wilshire Property, Mr. Whang and Mr. Yea raised $5.5 million through Pacific Commerce Bank, Shinhan Bank and other private investors to bid at the foreclosure sale of the Wilshire Property. On December 20, 2009, Arkland filed its chapter 11 petition, authorized by both its managers, in order to stay the foreclosure of the Wilshire Property.

What follows is a <u>brief</u> description of the Debtor's business and future business plans. Further details relating to the Debtor's financial condition and post-confirmation operation of the Debtor are found in sections X, XI, XII, XVI, and XV.

a.    Debtor is in the business of renting real estate.
1.    Location building #1: 2700 Wilshire Blvd., Los Angeles
2.    Square footage: 43,500 (building)/59,115 (land)
3.    Current occupancy rate: 100%
4.    Debtor will continue to lease its real estate until it is sold (see Section XVI).

b.    Before and during bankruptcy, Debtor received income from the beneficial interest in a 20.71% membership interest in Envision Foods, LLC (legal title to which is held for the Debtor's benefit by its manager, David Chang), which owns 19 Jack in the Box franchises. Pursuant to the Plan, Debtor will

8

transfer this interest to Mark VI in satisfaction of its claim secured by a pledge of this interest, and for other consideration described in Section XVI.

## VIII. CRITICAL PLAN PROVISIONS

Listed below are the sources of money earmarked to pay creditors and interest-holders.
    a.    Rents from the Debtor's real property.
    b.    Infusion of capital, consisting of: a loan, and a sale of the Debtor's assets.
    c.    Recoveries from estate claims.

Most likely, general unsecured creditors can expect payment on:
    a.    Within 15 days of the Effective Date
    b.    in the amount of $750,000
    c.    and (1) $3,250,000 as soon as practicable after the closing of the sale of the Debtor's real property; and (2) the remaining balance as soon as practicable after resolution of the estate's claims.

## IX. DESCRIPTION AND TREATMENT OF CLAIMS
    a.    <u>Overview of Plan Payments</u>

Below is a summary of who gets paid what and when and from what source. The identity of members within a particular class is explained beginning on the next page. The second column lists two amounts. First, the amount of each payment or distribution, or if only one is to be made, then that amount; second, the total amount that will be paid or distributed. <u>The Proponent is usually not required by law to pay an unsecured creditor or interest holder everything it would otherwise be entitled to, had a bankruptcy case not commenced.</u> The "Payment Due Date" column states the frequency with which payments will be made and the starting and ending dates. Look at the starting date to figure out who will be paid before and after you and in what amount. The "Source of Payment" column describes the expected source of payment. Further details regarding the source of payment are found in sections X and XI. The timing of payments to many creditors is determined by the "Effective Date." Administrative claims, unless otherwise stated, must be paid by the Effective Date. The timing of payments to impaired creditors is measured in part from the Effective Date and in part from the date on which the Debtor's assets will be sold. In this case, the Effective Date is _____.

| Payment Recipient | Amount of each Payment (Total amount to be paid) | Payment Due Date | Source of Payment |
|---|---|---|---|
| 1. Teresa A. Blasberg | $75,000 ($75,000) | __/__/2010 [effective date] | cash on hand; sale of personal property |

9

| | | | |
|---|---|---|---|
| 2.Committee Counsel | $25,000<br>($25,000) | __/__/2010<br>[effective date] | cash on hand; sale of<br>personal property |
| 3.Class "ONE" | $124,149<br>($124,149) | __/__/2010<br>[effective date] | cash on hand from rents |
| 4.Class "TWO" | $21,600<br>$6,694,400 | monthly<br>[effective date]-12/31/10 | post-confirmation income and<br>proceeds of asset sale |
| 5.Class "THREE" | $0<br>$0 | N/A | |
| 6.Class "FOUR" | $400,000<br>($400,000) | __/__/2010<br>[effective date] | sale of collateral |
| 7.Class "FIVE" | $6,255<br>($6,255) | __/__/2010<br>[effective date] | cash on hand, sale of<br>personal property |
| 8.Class "SIX" | Various<br>($5,700,000) | Various dates | loan, sale of real property<br>estate causes of action |
| 9.Class "SEVEN" | Various<br>($2,629,665) | Unknown | Cash remaining, if any<br>after all senior claims paid |
| 10.Class "EIGHT" | Unknown | Unknown | Cash remaining, if any, after<br>all claims paid |

All claims listed below are undisputed, except where otherwise indicated. On the effective date, the Disbursing Agent will deposit into a segregated account ("Reserve Account") an amount of cash equal to _____% of the aggregate amount of disputed claims. Cash together with interest accruing thereon will be held in trust for the benefit of holders of disputed claims.  When a disputed claim becomes allowed, the Disbursing Agent will distribute to the holder thereof an amount equal to _____% of its claim plus accrued interest thereon.  If a surplus arises from the fact that not all claims are allowed, then that money shall be available to guarantee payment of other claims.  The following claimants are affiliates of the Debtor: see claimants identified in Class Seven.

<u>Below is a detailed description and treatment of administrative expenses, claims and interests</u>

    b.   <u>Administrative Expenses</u>
        1.   These include the "actual, necessary costs and expenses of preserving the estate" as determined by the Court after notice to creditors of a request for payment and after a hearing thereon.
        2.   The Code requires that allowed administrative expenses be paid on the effective date unless the party holding the administrative expense agrees otherwise.  The claimants have not agreed otherwise.

10

Administrative Expense #1.
Claimant:  Teresa A. Blasberg
$75,000 (estimate), subject to court approval

Administrative Expense # 2.
Claimant:  Counsel for the Creditors' Committee 1
$25,000 (estimate), subject to court approval

Administrative Expense #3.
Claimant:  Office of the United States Trustee
$0

TOTAL $ 100,000

c.    Unsecured Priority Tax Claims
      1.    These include certain types of property, sales, and
            income taxes.
      2.    The Code requires that the holders of such claims
            receive regular installment payments in cash over a
            period ending not later than five years after the
            date  of  the  order  for  relief,  unless  agreed
            otherwise.  The claimant has not agreed otherwise.
            The total cash payments must have a present value
            equal  to  the  amount  of  the  allowed  claim.   The
            treatment  of  this  claim  is  in  a  manner  not  less
            favorable    than    the    most    favored    nonpriority
            unsecured claim provided in this Plan (other than
            any cash payments to an administratively convenient
            class).  The amount of the allowed claim includes
            the  amount  of  tax  owed  plus  interest  at  the
            statutory rate.  The present value is calculated as
            of the effective date.

      Tax Claim # 1.
      Claimant: Internal Revenue Service
      Date(s) of order for relief:
      Total amount of allowed claim as of 4/19/10: $46,665.95
      Total amount of cash payments (over time) to satisfy the
      claim:    N/A (See Additional Comments)
      Interest rate (to compensate creditor because claim is
            paid over time): N/A (See Additional Comments)
      First payment date: N/A (See Additional Comments)
      Amount of each installment: N/A (See Additional Comments)

---

1 The Committee was appointed on April 6, 2010, and has not yet retained
counsel.

Frequency of payments: N/A (See Additional Comments)
Total yearly payments: N/A (See Additional Comments)
Final Payment date: N/A (See Additional Comments)
Additional Comments:  The IRS claim is for estimated FICA
taxes assessed as a result of unfiled employment tax
returns.  The Debtor did not have any employees for the
periods for which taxes were assessed, and the Debtor
expects the IRS claim to be withdrawn upon the Debtor's
filing of the returns, which will be completed prior to
confirmation of the plan.

Tax Claim # 2.
Claimant: Franchise Tax Board
Date(s) of order for relief:
Total amount of allowed claim: $7,920.32
Total amount of cash payments (over time) to satisfy the
claim:     N/A
Interest rate (to compensate creditor because claim is
     paid over time): N/A
First payment date: Effective Date
Amount of each installment: $7,920.32
Frequency of payments: N/A
Total yearly payments: N/A
Final Payment date: Effective Date
Additional Comments:  The FTB claim states that it is
based unfiled returns; the Debtor is investigating the
the claim.

TOTAL UNSECURED TAX CLAIM(S) $ 54,586.27

d.    CLASS ONE
      Secured Claim of Los Angeles County [Statutory Tax Lien]
      Total amount of allowed claim: $ 124,149 (estimate)
      Total amount of payments (over time) to satisfy the
      secured claim: $124,149 (estimate)
      Interest rate (to compensate creditor because claim
           is paid over time): In accordance with state law
      Unimpaired
      First payment date: Effective Date
      Amount of each installment: $124,149
      Frequency of payments: N/A
      Total yearly payments: N/A
      Final payment date: Effective Date
      Lien is not modified in any way by the Plan.
      Description of Collateral: 2700 Wilshire Blvd.
      Additional comments:
      The claim estimate is based upon the total outstanding
      taxes ($283,557) minus amounts collected from the
      Debtor's tenant on account of secured property taxes
      ($159,407.31), for which the Debtor will seek Court

approval to pay over to the claimant prior to the hearing
on confirmation of the plan.

e.    CLASS TWO
      Secured Claim of Young Cho [First Deed of Trust]
      Total amount of allowed claim: 6,617,692.22
      Total amount of payments (over time) to satisfy the
      secured claim:
      Interest rate (to compensate creditor because claim
          is paid over time): 7%
      Impaired
      First payment date: Effective Date
      Amount of each installment: $21,600.38
      Frequency of payments: Monthly, with balloon upon sale
      Total yearly payments:
      Final payment date: December 31, 2010
      Lien is not modified in any way by the Plan.
      Description of Collateral: 2700 Wilshire Blvd.
      Additional comments:

f.    CLASS THREE
      Secured Claim of Sixth and Virgil[Second Deed of Trust]
      Total amount of allowed claim: $0
      Total amount of payments (over time) to satisfy the
      secured claim: $0
      Interest rate (to compensate creditor because claim
          is paid over time): N/A
      Unimpaired
      First payment date: N/A
      Amount of each installment: N/A
      Frequency of payments: N/A
      Total yearly payments: N/A
      Final payment date: N/A
      Lien is subordinated by the Plan to the extent of
      the value received from non-estate collateral, in the
      event the Court determines that the claim has not already
      been satisfied by claimant's acquisition of non-estate
      property securing the claim.
      Description of Collateral: (1) 2700 Wilshire Blvd.; and
      (2) 601 S. Commonwealth Ave. and 2990 West 6th St.
      Additional comments:
      This treatment depends upon the Debtor prevailing in an
      adversary proceeding to be commenced against claimant
      seeking, among other relief, equitable subordination of
      the claimant's lien to the extent of the value of the
      non-estate collateral it holds.

13

g.    CLASS FOUR
      Secured Claim of Mark VII [First Priority Pledge]
      Total amount of allowed claim: $381,375, plus interest
      Total value of payments (over time) to satisfy the
      secured claim: $381,375 plus interest
      Interest rate (to compensate creditor because claim
          is paid over time): 10%
      Impaired
      First payment date: Effective Date
      Amount of each installment: $381,375 plus interest
      Frequency of payments: N/A
      Total yearly payments: N/A
      Final payment date: Effective Date
      Lien is not modified in any way by the Plan.
      Description of Collateral: Beneficial interest in 20.71%
      membership interest in Envision Foods, LLC
      Additional comments:
      The claim amount listed above is as of the Petition Date;
      the claim will accrue interest from the petition date to
      the date on which the claim is paid from the proceeds of
      the sale of the Debtor's interest to Envision Foods, LLC.

h.    CLASS FIVE
      Secured Claim of Franchise Tax Board [Statutory Tax lien]
      Total amount of allowed claim: $ 6,255.01
      Total amount of payments (over time) to satisfy the
      secured claim: $6,255.01
      Interest rate (to compensate creditor because claim
          is paid over time): N/A
      Impaired
      First payment date: Effective Date
      Amount of each installment: $6,255.01
      Frequency of payments: N/A
      Total yearly payments: N/A
      Final payment date: Effective Date
      Lien is not modified in any way by the Plan.
      Description of Collateral: 2700 Wilshire Blvd.
      Additional comments:


i.    CLASS SIX
      Unsecured Claims
      See Exhibit "B" for list of claimants and amount owed
      each.
      Total amount of allowed claims:
      Total amount of payments (over time) to satisfy claims:
      Interest rate: N/A
      Impaired

                                14

First payment date: Closing of new loan
Amount of each installment: (1) $750,000; (2) $3,250,000
(3) remaining balance to the extent recovered from estate
claims
Frequency of payments: (1) at loan closing; (2) at
closing of 2700 Wilshire sale; (3) as recovered at the
discretion of the estate representative (see Sec. XIX.d)
Total yearly payments: Various
Final payment date: Final resolution of estate claims
Additional comments:
Payment of the second installment of $3,250,000 assumes
that the Debtor will obtain an order from Court
subordinating the Sixth and Virgil lien to the extent of
the value of non-estate collateral held by Sixth and
Virgil.

j.   CLASS SEVEN
     Insider Claims
     1.   This is the claim of a person as defined in 11
          U.S.C.A. § 101(31) (West Supp. 2006). Essentially,
          an insider is a person with a close relationship
          with the debtor, other than a creditor-debtor
          relationship.

     Insider # 1.
     Claimant: Jae Woo Kim
     Total amount of allowed claim: $1,500,000
     Total amount of payments (over time) to satisfy claims:
     Unknown – total depends upon amount remaining after
     allowed claims in senior classes are paid in full.
     Interest rate (to compensate creditors because claim is
          paid over time): N/A
     Impaired
     First payment date: 30 days after claims in senior
     classes have been paid in full
     Amount of each installment: Pro rata with other insider
     claims from balance of estate property remaining after
     claims in all senior classes are paid in full
     Frequency of payments: N/A
     Total yearly payments: N/A
     Final payment date: N/A
     Additional comments:
     Payment of this claim is also subject to claimant's
     compliance with 11 U.S.C. § 502(d).

     Insider # 2.
     Claimant: JPY, Inc.
     Total amount of allowed claim: $150,000
     Total amount of payments (over time) to satisfy claims:

15

Unknown – total depends upon amount remaining after allowed claims in senior classes are paid in full.
Interest rate (to compensate creditors because claim is paid over time): N/A Impaired
First payment date: 30 days after claims in senior classes have been paid in full
Amount of each installment: Pro rata with other insider claims from balance of estate property remaining after claims in all senior classes are paid in full
Frequency of payments: N/A
Total yearly payments: N/A
Final payment date: N/A
Additional comments:

Insider # 3.
Claimant:  Stuart Whang
Total amount of allowed claim: $550,000
Total amount of payments (over time) to satisfy claims:
Interest rate (to compensate creditors because claim is paid over time): N/A Impaired
First payment date: 30 days after claims in senior classes have been paid in full
Amount of each installment: Pro rata with other insider claims from balance of estate property remaining after claims in all senior classes are paid in full
Frequency of payments: N/A
Total yearly payments: N/A
Final payment date: N/A
Additional comments:
Payment of this claim is also subject to claimant's compliance with 11 U.S.C. § 502(d).

Insider # 4.
Claimant:  Choong Yea
Total amount of allowed claim: $509,172
Total amount of payments (over time) to satisfy claims:
Interest rate (to compensate creditors because claim is paid over time): N/A Impaired
First payment date: 30 days after claims in senior classes have been paid in full
Amount of each installment: Pro rata with other insider claims from balance of estate property remaining after claims in all senior classes are paid in full
Frequency of payments: N/A
Total yearly payments: N/A
Final payment date: N/A

16

Additional comments:
Payment of this claim is also subject to claimant's
compliance with 11 U.S.C. § 502(d).

Insider # 5.
Claimant:  HM Global Partners, Inc.
Total amount of allowed claim: $970,000
Total amount of payments (over time) to satisfy claims:
Interest rate (to compensate creditors because claim is
     paid over time): N/A
Impaired
First payment date: 30 days after claims in senior
classes have been paid in full
Amount of each installment: Pro rata with other insider
claims from balance of estate property remaining after
claims in all senior classes are paid in full
Frequency of payments: N/A
Total yearly payments: N/A
Final payment date: N/A
Additional comments:
Payment of this claim is also subject to claimant's
compliance with 11 U.S.C. § 502(d).

Insider # 6.
Claimant:  Alexandra Kim
Total amount of allowed claim: $250,000
Total amount of payments (over time) to satisfy claims:
Interest rate (to compensate creditors because claim is
     paid over time): N/A
Impaired
First payment date: 30 days after claims in senior
classes have been paid in full
Amount of each installment: Pro rata with other insider
claims from balance of estate property remaining after
claims in all senior classes are paid in full
Frequency of payments: N/A
Total yearly payments: N/A
Final payment date: N/A
Additional comments:

Insider # 7.
Claimant:  David Chang
Total amount of allowed claim: $264,864
Total amount of payments (over time) to satisfy claims:
Interest rate (to compensate creditors because claim is
     paid over time): N/A
Impaired
First payment date: 30 days after claims in senior
classes have been paid in full

17

Amount of each installment: Pro rata with other insider
claims from balance of estate property remaining after
claims in all senior classes are paid in full
Frequency of payments: N/A
Total yearly payments: N/A
Final payment date: N/A
Additional comments:
Payment of this claim is also subject to claimant's
compliance with 11 U.S.C. § 502(d).


Insider # 8.
Claimant:  General Tool, Inc.
Total amount of allowed claim: $910,000
Total amount of payments (over time) to satisfy claims:
Interest rate (to compensate creditors because claim is
     paid over time): N/A
Impaired
First payment date: 30 days after claims in senior
classes have been paid in full
Amount of each installment: Pro rata with other insider
claims from balance of estate property remaining after
claims in all senior classes are paid in full
Frequency of payments: N/A
Total yearly payments: N/A
Final payment date: N/A
Additional comments:
Payment of this claim is also subject to claimant's
compliance with 11 U.S.C. § 502(d).

Insider # 9.
Claimant: Wil-Cren, LLC
Total amount of allowed claim: $1,031,300
Total amount of payments (over time) to satisfy claims:
Interest rate (to compensate creditors because claim is
     paid over time): N/A
Impaired
First payment date: 30 days after claims in senior
classes have been paid in full
Amount of each installment: Pro rata with other insider
claims from balance of estate property remaining after
claims in all senior classes are paid in full
Frequency of payments: N/A
Total yearly payments: N/A
Final payment date: N/A
Additional comments:

TOTAL INSIDER CLAIMS $ 4,249,886

18

k.   CLASS EIGHT
     Members Interests
     1.   Under the Plan, members will receive their pro rata
          share of any estate funds remaining after all
          claims in senior classes are paid in full.

## X.   SOURCE OF MONEY TO PAY CLAIMS AND INTEREST-HOLDERS

The Plan cannot be confirmed unless the Court finds that it is
"feasible," which means that the Proponent has timely submitted
evidence establishing that the Debtor will have sufficient funds
available to satisfy all expenses, including the scheduled creditor
payments discussed above.  What follows is a statement of projected
cash flow for the duration of the Plan.  The focus is on projected
cash receipts and cash disbursements.  All non-cash items such as
depreciation, amortization, gains and losses are omitted.  A
positive number reflects a source of cash; a (negative number)
reflects a use of cash.  A more detailed statement of cash flow
projections for the duration of Plan payments is attached as
Exhibit "C".

| | Years of Plan Payments | |
| --- | --- | --- |
| | year#1 | year #2 |
| | May-Dec 2010 | Jan-Aug 2011 |
| Net cash flow | | |
| From operations & asset sales: | | |
| Collections from tenant | 648,900 | |
| Dividend income | 63,210 | |
| Sale of Envision Foods | 550,000 | 200,000 |
| Sale of 2700 Wilshire | 11,347,500 | |
| Estate causes of action | | 3,033,915 |
| Total | 12,609,610 | 3,233,915 |
| Yearly plan payments: | (11,094,400) | (1,700,000) |
| Net cash available to Debtor | | |
| after all plan payments made: | 1,515,210 | 1,533,915 |

Section XV(c) states the assumptions and details surrounding the
statement of projected cash flow.

On the effective date, the Plan pays approximately $650,000.

## XI.   FINANCIAL RECORDS TO ASSIST IN DETERMINING WHETHER PROPOSED PAYMENT IS FEASIBLE

Attached as Exhibit "D" are three types of financial documents,
including balance sheets, cash flow statements and income and
expense statements for the period including the most recent twelve-
month calendar year and all months subsequent thereto.

19

## XII. ASSETS AND LIABILITIES OF THE ESTATE
     a.   <u>Assets</u>

The identity and fair market value of the estate's assets are listed in Exhibit "E" so that the reader can assess what assets are at least theoretically available to satisfy claims and to evaluate the overall worth of the bankruptcy estate.  Whether the Plan proposes to sell any of these assets is discussed in section XVI.

     b.   <u>Liabilities</u>

Exhibit "E" shows the allowed claims against the estate, claims whose treatment is explained in detail by section IX.

     c.   <u>Summary</u>

The fair market value of all assets equals $18,401,927.  Total liabilities equal $17,227,164.

## XIII.  TREATMENT OF NONCONSENTING CLASSES

As stated above, even if all classes do not consent to the proposed treatment of their claims under the Plan, the Plan may nonetheless be confirmed if the dissenting classes are treated in a manner prescribed by the Code.  The process by which dissenting classes are forced to abide by the terms of a plan is commonly referred to as "cramdown."  The Code allows dissenting classes to be crammed down if the Plan does not "discriminate unfairly" and is "fair and equitable."  The Code does not define discrimination, but it does provide a minimum definition of "fair and equitable."  The term can mean that <u>secured claimants</u> retain their liens and receive cash payments whose present value equals the value of their security interest.  For example, if a creditor lends the Debtor $100,000 and obtains a security interest in property that is worth only $80,000, the "fair and equitable" requirement means that the claimant is entitled to cash payments whose present value equals $80,000 and not $100,000.  The term means that <u>unsecured claimants</u> whose claims are not fully satisfied at least know that no claim or interest that is junior to theirs will receive anything under the Plan, except where the Debtor is an individual, has elected to retain property included in the Estate under 11 U.S.C.A. § 1115 (West Supp. 2006) and has satisfied 11 U.S.C.A. § 1129(b)(2)(B)(ii) (West Supp. 2006).  "Fair and equitable" means that each <u>holder of an interest</u> must receive the value of such interest or else no junior interest is entitled to receive anything.

Therefore, if a class of general unsecured claims votes against the Plan, the Plan cannot be confirmed where the Debtor or a class of interest holders (e.g. shareholders or partners) will receive or retain any property under the Plan, <u>unless</u> the Plan provides that

20

the class of general unsecured claims shall be paid in full with interest. These are complex statutory provisions and the preceding paragraphs do not purport to state or explain all of them.

## XIV.    TREATMENT OF NONCONSENTING MEMBERS OF CONSENTING CLASS (CHAPTER 7 LIQUIDATION ANALYSIS)

The Plan must provide that a nonconsenting impaired claimant or interest holder of a consenting class receive at least as much as would be available had the Debtor filed a Chapter 7 petition instead.

In a Chapter 7 case the general rule is that the Debtor's assets are sold by a trustee. Unsecured creditors generally share in the proceeds of sale only after secured creditors and administrative claimants are paid. Certain unsecured creditors get paid before other unsecured creditors do. Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the total amount of allowed claims.

A creditor would recover from the assets of the bankruptcy estate less under Chapter 7 than under Chapter 11 for two reasons. First, the liquidation value of the Debtor's real property of $11.25 is less than its fair market value of at least $11.75 million because there is a more limited market for single-tenant properties, and the marketing period is likely to be shorter in a chapter 7 case. Second, in a chapter 7 case a trustee is appointed and is entitled to compensation from the bankruptcy estate in an amount no more than 25% of the first $5,000 of all moneys disbursed, 10% on any amounts over $5,000 and up to $50,000, 5% on all amounts over $50,000 and up to $1,000,000, and such reasonable compensation no more than 3% of moneys over $1,000,000.

|  | Chapter 7 | Chapter 11 |
|---|---|---|
| 1. value of assets | 14,983,915 | 15,533,915 |
| 2. administrative exp. secured claims priority unsecured claims | 7,604,250 | 7,604,250 |
| 3. chapter 7 trustee fee | 471,517 | n/a |
| TOTAL AVAILABLE FOR DISTRIBUTION TO GENERAL UNSECURED CR. | 6,908,148 | 7,929,665 |

21

|                      |                          |
|----------------------|--------------------------|
| unsecured creditors  | unsecured creditors      |
| receive payment of   | receive payment of       |
| 100% of total        | 100% of total allowed    |
| claims               | claims under Plan        |

## XV.  FUTURE DEBTOR

a.  <u>Management of Debtor</u>
    1.  Names of persons who will manage the Debtor's business affairs: David Chang
    2.  Proposed compensation to persons listed above: to be determined
    3.  Qualifications: to be provided
    4.  Affiliation of persons to Debtor: Manager
    5.  Job description: [Role relative to Multi-Purpose Post-Confirmation Agent to be determined in consultation with the Committee]

b.  <u>Future Financial Outlook</u>

The Proponent believes that the Debtor's economic health has improved from its prebankruptcy state for the following reasons: the Debtor has collected past due rent from its tenant (including property taxes) and the tenant continues to pay rent when due.

Section X provides a summary of the projected cash flow of the Debtor for the duration of the Plan.  The following assumptions underlie the projections: (1) the Effective Date will be no later than early September, 2010; (2) Envision Foods, LLC will purchase the Debtor's interest for $750,000, payable $400,000 on the Effective Date, and $50,000 per month from October, 2010 to April, 2011; (3)  escrow for the sale of 2700 Wilshire will close by December 31, 2010, at a price of at lease $11.75 million; (4) estate causes of action will generate recoveries of $3,033,915 and will be collected by August, 2011; and (5) the Debtor will succeed in obtaining a subordination of the Sixth and Virgil, LLC claim in an amount equal to the value of the claimant's non-estate collateral. As previously stated, Plan payments will come initially from the continued operation of the Debtor's business, and then from the sale of its assets.

[Identity, role and compensation of Multi-Purpose Post-Confirmation Agent to be determined in consultation with the Committee.]

22

**XVI. SALE OR TRANSFER OF PROPERTY; ASSUMPTION OF CONTRACTS AND LEASES; OTHER PROVISIONS**

The Plan provides for the following:

a.    Sale of property of the estate

The Debtor's beneficial interest in a 20.71% interest in Envision Foods, LLC, will be sold to Envision Foods, LLC for $750,000; the initial payment will be in the amount necessary to satisfy Mark VII's secured claim, with the balance payable $50,000 per month until paid in full.

An investor group headed by Howard Lee will make an unsecured loan to the Debtor in the amount of $1.5 million, at 10% interest, and receive an option to purchase the Debtor's real property located at 2700 Wilshire for $11.75 million on the later of December 31, 2010 or the date on which the Court approves the transaction through confirmation of the plan, or otherwise. The Debtor expects the lender/optionee to exercise the option, but if the option is not exercised, the Debtor will market the property for sale by August, 2011.

b.    Assumption of the Wi Spa, LLC lease

The Debtor will assume the lease with Wi Spa, LLC for the 2700 Wilshire property, dated as of September 1, 2008.

The Court must make certain findings of fact before approving the aforementioned provisions as part of the Plan. The Proponent will request that the Court make the appropriate findings at the confirmation hearing, based upon evidence submitted in support of the confirmation motion.

**XVII. BANKRUPTCY PROCEEDINGS**

The Court entered a consensual order resolving a motion by the United States Trustee to dismiss or convert the case, which provided for continued compliance by the Debtor.

**XVIII.    TAX CONSEQUENCES OF PLAN**

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS. The following disclosure of possible tax consequences is intended solely for the purpose of

alerting readers about possible tax issues this Plan may present to the Debtor.  The Proponent CANNOT and DOES NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action.

Pursuant to Section 1146(c) of the Bankruptcy Code, any transfers or mortgages by or from a Debtor to a Reorganized Debtor or any other person or entity pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment, and the confirmation order shall direct the appropriate state or local government officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any instruments or other documents issued pursuant to the Plan without the payment of any such tax or governmental assessment.

The following are the tax consequences which the Plan will have on the Debtor's tax liability:

As a limited liability company, the Debtor itself will not have tax liability as a result of the plan.  Instead, for tax purposes, the Debtor will be treated as a partnership pursuant to Internal Revenue Code Section 701, i.e., the tax consequences of gains, losses, tax credits, tax deductions, etc. will be passed through to the Debtor's individual members.  Therefore, the income tax treatment of transactions contemplated by the Plan may vary for each member depending upon each member's particular circumstances.

The United States federal income tax consequences of the transactions contemplated by the Plan to holders of Allowed Claims generally will be as follows.  These consequences (1) including the character, timing and amount of income, gain or loss recognized) will depend upon, among other things: (1) the manner in which a holder acquired a claim; (2) the length of time the claim has been held; (3) the holder's method of tax accounting; (4) whether the claimholder as taken a bad debt deduction with respect to the claim (or any portion of the claim) in the current or prior years; and (5)(a) whether the claim was acquired at a discount, (b) whether the claimholder has previously included accrued but unpaid interest with respect to the claim, (c) whether the claim is an installment obligation for United States federal income tax purposes and (d) whether the claim constitutes a "security" for United States federal income tax purposes.  Therefore, holders of claims should consult their own tax advisors for information that may be relevant to their particular situations and circumstances and the particular tax consequences to them of the transactions contemplated by the

24

Plan.

## XIX. EFFECT OF CONFIRMATION OF PLAN
    a.    General comments

The provisions of a confirmed Plan bind the Debtor, any entity acquiring property under the Plan, and any creditor, interest holder, or general partner of the Debtor, even those who do not vote to accept the Plan.

The confirmation of the Plan vests all property of the estate in the Debtor.

The automatic stay is lifted upon confirmation as to property of the estate.  However, the stay continues to prohibit collection or enforcement of pre-petition claims against the Debtor or the Debtor's property until the date the Debtor receives a discharge, if any.  If the Debtor does not seek a discharge, the discharge is deemed denied, and the stay as to the Debtor and the Debtor's property terminates upon entry of the order confirming the Plan.

    b.    Discharge of liability for payment of debts; status
          of liens; equity security holders

The Debtor is not entitled to receive a discharge pursuant to 11 U.S.C.A. 1141(d)(3) (West 2004).

    c.    Modification of the Plan

The Proponent may modify the Plan pursuant to 11 U.S.C.A. § 1127 (West 2004 & Supp. 2006).

    d.    Post-Confirmation Causes of Action

To the best knowledge of the Proponent, the estate has the following causes of action:

| Causes of Action | Proposed Defendants | Amount in Controversy |
|---|---|---|

[To be determined in consultation with the Committee].


_____ [To be determined in consultation with the Creditors' Committee] is designated as representative of the estate under 11 U.S.C.A. § 1123(b)(3) (West 2004) and shall have the right to assert any or all of the above causes of action post-confirmation in accordance with applicable law.

    e.  <u>Final Decree</u>

Once the Plan has been consummated, a final decree may be entered upon motion of the Proponent.  The effect of the final decree is to close the bankruptcy case.  After such closure, a party seeking any type of relief relating to a Plan provision can seek such relief in a state court of general jurisdiction.

## XX.  DECLARATION IN SUPPORT OF DISCLOSURE STATEMENT AND PLAN

I, David Chang, declare under penalty of perjury under the laws of the United States of America that the following statements are true and based upon personal knowledge.

1.    Teresa A. Blasberg is the individual who prepared this document. Ms. Blasberg is the Debtor's bankruptcy counsel.

2.    The source of all financial data is the Debtor's books and records.

3.    All facts and representations in the Plan and Disclosure Statement are true to the best of my knowledge.

4.    No fact material to a claimant or equity security holder in voting to accept or reject the proposed Plan has been omitted.

5.    The name of the person(s) who prepared the cash flow projections and the other financial documents is David Chang, and such person was acting within the capacity of Manager for the Debtor.

6.    The accounting method(s) used to prepare the cash flow projections and the other financial documents is cash basis.

Date:  4/19/2010    _____

BALLOT FOR ACCEPTING OR REJECTING PLAN

Arkland Investment, LLC filed a Plan of Reorganization on April 19, 2010.  By this ballot you will decide whether to accept or reject this Plan.

The Plan referred to in this ballot can be confirmed by the Court and thereby bind you if it is accepted by the holders of two-thirds in amount and more than one-half in number of claims in each class and the holders of two-thirds in amount of equity security interests in each class voting on the Plan.

If the requisite acceptances are not obtained, the Court may nevertheless confirm the Plan if the Court finds that the Plan accords fair and equitable treatment to the class or classes rejecting it and otherwise satisfies the requirements of 11 U.S.C.A. § 1129(b) (West 2004 & Supp. 2006).

Check the appropriate line below, which describes your interest:

_____ The undersigned, a creditor with an allowed claim in the amount of $_____:

_____ The undersigned, the holder of a _____ % membership interest in the Debtor:

[ ]  Accepts the Plan

[ ]  Rejects the Plan


Print or type name: _____

State which class you are a member of: _____

Signed:           _____

If appropriate, by: _____  as _____

                    Address:

Return this ballot on or before _____ to Teresa A. Blasberg, Blasberg & Associates, 526 N. Juanita Ave, Los Angeles, CA 90004.

# EXHIBIT A

**WILL BE PROVIDED**

# EXHIBIT B

**1. List of Unsecured Claims**

| | Creditors | Proof of Claim | Allowed Claim | 1st payment | 2nd payment | 3rd payment |
|---|---|---|---|---|---|---|
| 1 | Niemann Construction,Inc. | 910,000 | 910,000 | 120,186 | 520,805 | 272,421 |
| 2 | Christopher Joseph&Co. | 127,921 | 127,921 | 16,895 | 73,211 | 38,295 |
| 3 | Corbel Architects,Inc. | 49,500 | 49,500 | 6,538 | 28,330 | 14,819 |
| 4 | HIC Acceptence,LLC | 5,043,573 | 3,500,000 | 462,253 | 2,003,097 | 1,047,774 |
| 5 | Emil and Mary Joseph | 545,000 | 545,000 | 71,979 | 311,911 | 163,153 |
| 6 | Park & Velayos | 366,286 | 366,286 | 48,376 | 209,630 | 109,653 |
| 7 | Pilgrim School | 180,000 | 180,000 | 23,773 | 103,016 | 53,886 |
| | Total | 7,042,280 | 5,678,707 | 750,000 | 3,250,000 | 1,700,000 |

(1) First Payment : $750,000 upon financing of $1.5 million
(2) Second Payment : $3,250,000 upon closing of 2700 Wilshire Building
(3) Las Payment : upon collection of loan from Jaewoo Kim

**2. List of Insiders**

| | | Proof of Claim | Allowed Claim |
|---|---|---|---|
| 1 | Stuart Whang | 550,000 | 550,000 |
| 2 | JPY,Inc. | 150,000 | - |
| 3 | Jaewoo & Jaehee Kim | 1,500,000 | - |
| 4 | Choong Y Yea | 509,172 | 273,722 |
| 5 | HM Global Partners,Inc. | 970,000 | 970,000 |
| 6 | Alexandra Kim | 250,000 | 250,000 |
| 7 | David Chang | - | 264,864 |
| 8 | General Tool,Inc. | - | 910,000 |
| 9 | Wil-Cren,LLC | - | 1,031,300 |
| | | | |
| | **Total Loan - insiders** | **3,929,172** | **4,249,886** |

**EXHIBIT B**

**EXHIBIT C**

**ARKLAND INVESTMENT, LLC**
**PROPOSED CASH FLOW PROJECTION (Exercise of Purchase Option)**
**FROM MAY, 2010 TO AUGUST, 2011**

| Event | May-10 | Jun-10 | Jul-10 | Aug-10 | Sep-10 | Oct-10 | Nov-10 | Dec-10 |
|---|---|---|---|---|---|---|---|---|
| | Disclosure Stmt Hearing | | | Conf Hearing Plan Approv | $1.5mil Loan Sale-Env | | Escrow close 2700 Wilshire | |
| **Cash Inflow :** | | | | | | | | |
| Rent-wi spa | 92,700 | 92,700 | 92,700 | 92,700 | 92,700 | 92,700 | 92,700 | - |
| Dividend-Envision | 18,060 | 9,030 | 18,060 | 18,060 | - | | | |
| Financing (a) | | | | | 1,485,000 | | | |
| Sale-Envision Foods(b) | | | | - | 400,000 | 50,000 | 50,000 | 50,000 |
| Collection-JWK Ln(d) | | | | | | | | |
| Sale-2700 Wilshire© | | | | | | | 11,347,500 | - |
| Total Cash Inflow | 110,760 | 101,730 | 110,760 | 110,760 | 1,977,700 | 142,700 | 11,490,200 | 50,000 |
| **Cash Outflow :** | | | | | | | | |
| APP-Young S Cho (e) | 86,400 | 21,600 | 21,600 | 21,600 | 1,021,600 | 21,600 | 5,500,000 | - |
| APP-Sixth&Virgil (f) | - | - | - | - | - | - | - | - |
| Interest Pmt-Loan(g) | | | | - | 12,500 | 12,500 | 1,500,000 | - |
| Payment-Unsecured(h) | - | - | - | - | 750,000 | | 3,250,000 | - |
| Payment-Mark VII | - | | | - | 400,000 | | | |
| Payment-Taxes (i) | | | | | 140,097 | | - | |
| Legal Expense | 20,000 | 20,000 | 20,000 | 20,000 | 100,000 | 25,000 | 25,000 | 25,000 |
| US Trustee Fee | - | | 1,250 | | | 9,750 | | |
| Admin Expenses | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| **Total Cash outflow** | 108,400 | 43,600 | 44,850 | 43,600 | 2,426,197 | 70,850 | 10,277,000 | 27,000 |
| **Net Cash in(out)flow** | 2,360 | 58,130 | 65,910 | 67,160 | (448,497) | 71,850 | 1,213,200 | 23,000 |
| **Accum Cash** | 760,695 | 818,825 | 884,735 | 951,895 | 503,398 | 575,248 | 1,788,448 | 1,811,448 |

**EXHIBIT C ; page 1**

**ARKLAND INVESTMENT , LLC**
**PROPOSED CASH FLOW PROJECTION (Exercise of Purchase Option)**
**FROM MAY, 2010 TO AUGUST , 2011**

| Event | Jan-11 | Feb-11 | Mar-11 | Apr-11 | May-11 | Jun-11 | Jul-11 | Aug-11 |
|---|---|---|---|---|---|---|---|---|
| **Cash Inflow :** | | | | | | | | |
| Rent-wi spa | - | - | - | - | - | - | - | - |
| Dividend-Envision | - | - | - | - | - | - | - | - |
| Financing (a) | | | | - | - | | | - |
| Sale-Envision Foods(b) | 50,000 | 50,000 | 50,000 | 50,000 | - | - | - | - |
| Collection-JWK Ln(d) | | | | | | | | 3,033,915 |
| Sale-2700 Wilshire© | | | | | | | | |
| **Total Cash Inflow** | 50,000 | 50,000 | 50,000 | 50,000 | - | - | - | 3,033,915 |
| **Cash Outflow :** | | | | | | | | |
| APP-EastWest (d) | - | - | - | - | - | - | - | - |
| APP-Univ Bank (f) | - | - | - | - | - | - | - | - |
| Interest Pmt-Loan(a) | - | - | - | - | - | - | - | - |
| Payment-Unsecured | - | - | - | - | | | | 1,700,000 |
| Payment-Mark VII | - | - | | | | | | |
| Payment-Taxes (i) | | | | | | | | |
| Legal Expense | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 |
| US Trustee Fee | 13,000 | | - | 1,625 | | | 1,625 | - |
| Admin Expenses | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| **Total Cash outflow** | 40,000 | 27,000 | 27,000 | 28,625 | 27,000 | 27,000 | 28,625 | 1,727,000 |
| **Net Cash in(out)flow** | 10,000 | 23,000 | 23,000 | 21,375 | (27,000) | (27,000) | (28,625) | 1,306,915 |
| **Accum Cash** | 1,821,448 | 1,844,448 | 1,867,448 | 1,888,823 | 1,861,823 | 1,834,823 | 1,806,198 | 3,113,113 |

**EXHIBIT C ; page 2**

**ARKLAND INVESTMENT, LLC**
**PROPOSED CASH FLOW PROJECTION (Exercise of Purchase Option)**
**FROM MAY, 2010 TO AUGUST , 2011**

(a) Loan $1,500,000 less 1% fee

(b) Envision Foods,LLC offered to purchase Arkland's ownership at $750,000
Envision Foods,LLC will pay $400,000 upon confirmation of the plan and $50,000/month for 7 months.

@ Proceed from  Sale of 2700 Wilshire Blvd. Property
Sales Price ($11,750,000) less 3% commission and appx $50,000 in selling expenses.

(d)Collection of Loan to Jaewoo Kim  Net $3,033,915(Gorss $4,975,215 less $1,941,300)
Assuming Collection in August, 2011

(e) Adequate Protection Payment of $21,600 per month.
Paydown $1 million with financing of $1.5 million. Will be paid off upon sale of 2700 Wilshire Bldg.

(f) Assuming no deficiencies from Note held by Sixth & Virgil,LLC

(g) 10% per annum on $1.5 million financing

(h) Payment to Unsecured creditors (only outsiders) Total payment of $5,700,000
$4 million will be paid upon sale of 2700 Wilshire Bldg.  The balance will be paid upon collection of Kim's loan.

(i) Property Taxes due $ 124,150 and Franchise Fee of $15,947.
Taxes will be paid out of $1.5 mil financing to reduce excessive financing charges and penalties.

**EXHIBIT C ; page 3**

ARKLAND INVESTMENT , LLC
PROPOSED CASH FLOW PROJECTION (Non-Exercise of Purchase Option)
FROM MAY, 2010 TO AUGUST , 2011

| Event | May-10 | Jun-10 | Jul-10 | Aug-10 | Sep-10 | Oct-10 | Nov-10 | Dec-10 |
|---|---|---|---|---|---|---|---|---|
| | Disclosure Stmt Hearing | | | Conf Hearing Plan Approv | $1.5mil Loan Sale-Env | | | |
| **Cash Inflow :** | | | | | | | | |
| Rent-wi spa | 92,700 | 92,700 | 92,700 | 92,700 | 92,700 | 92,700 | 92,700 | 92,700 |
| Dividend-Envision | 18,060 | 9,030 | 18,060 | 18,060 | - | | | |
| Financing (a) | | | | | 1,485,000 | | | |
| Sale-Envision Foods(b) | | | | - | 400,000 | 50,000 | 50,000 | 50,000 |
| Collection-JWK Ln(d) | | | | | | | | |
| Sale-2700 Wilshire© | | | | - | - | - | - | - |
| Total Cash Inflow | 110,760 | 101,730 | 110,760 | 110,760 | 1,977,700 | 142,700 | 142,700 | 142,700 |
| **Cash Outflow :** | | | | | | | | |
| APP-Young Cho (e) | 86,400 | 21,600 | 21,600 | 21,600 | 1,021,600 | 21,600 | 21,600 | 21,600 |
| APP-Sixth&Virgil(f) | - | - | - | - | - | - | - | - |
| Interest Pmt-Loan(g) | - | - | - | - | 12,500 | 12,500 | 12,500 | 12,500 |
| Payment-Unsecured(h) | - | - | | - | 750,000 | | | |
| Payment-Mark VII | - | - | | - | 400,000 | | | |
| Payment-Taxes | | | | | 140,097 | | | |
| Legal Expense | 20,000 | 20,000 | 20,000 | 20,000 | 100,000 | 25,000 | 25,000 | 25,000 |
| US Trustee Fee | - | | 1,625 | | | 9,750 | | |
| Admin Expenses | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| | | | | | | | | |
| Total Cash outflow | 108,400 | 43,600 | 45,225 | 43,600 | 2,426,197 | 70,850 | 61,100 | 61,100 |
| Net Cash in(out)flow | 2,360 | 58,130 | 65,535 | 67,160 | (448,497) | 71,850 | 81,600 | 81,600 |
| **Accum Cash** | **760,695** | **818,825** | **884,360** | **951,520** | **503,023** | **574,873** | **656,473** | **738,073** |

EXHBIT C ; page 4

ARKLAND INVESTMENT , LLC
PROPOSED CASH FLOW PROJECTION (Non-Exercise of Purchase Option)
FROM MAY, 2010 TO AUGUST , 2011

| Event | Jan-11 | Feb-11 | Mar-11 | Apr-11 | May-11 | Jun-11 | Jul-11 | Aug-11 |
|---|---|---|---|---|---|---|---|---|
| **Cash Inflow :** | | | | | | | | |
| Rent-wi spa | 92,700 | 92,700 | 92,700 | 92,700 | 92,700 | 92,700 | 92,700 | - |
| Dividend-Envision | - | - | - | - | - | | | |
| Financing (a) | | | - | - | - | | - | |
| Sale-Envision Foods(b) | 50,000 | 50,000 | 50,000 | 50,000 | | | - | - |
| Collection-JWK Ln(d) | | | | | | | | 3,033,915 |
| Sale-2700 Wilshire© | | | | | | | | 11,590,000 |
| Total Cash Inflow | 142,700 | 142,700 | 142,700 | 142,700 | 92,700 | 92,700 | 92,700 | 14,623,915 |
| **Cash Outflow :** | | | | | | | | |
| APP-Young Cho (e) | 21,600 | 21,600 | 21,600 | 21,600 | 21,600 | 21,600 | 21,600 | 5,500,000 |
| APP-Sixth&Virgil(f) | - | - | - | - | - | - | - | - |
| Interest Pmt-Loan(g) | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 1,500,000 |
| Payment-Unsecured(h) | - | - | | - | - | | | 4,950,000 |
| Payment-Mark VII | - | - | | - | - | | | |
| Payment-Taxes | | | | | | | | |
| Legal Expense | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 |
| US Trustee Fee | 1,625 | | | 1,625 | | | 1,625 | |
| Admin Expenses | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| Total Cash outflow | 62,725 | 61,100 | 61,100 | 62,725 | 61,100 | 61,100 | 62,725 | 11,977,000 |
| Net Cash in(out)flow | 79,975 | 81,600 | 81,600 | 79,975 | 31,600 | 31,600 | 29,975 | 2,646,915 |
| Accum Cash | 940,441 | 1,022,041 | 1,103,641 | 1,183,616 | 1,215,216 | 1,246,816 | 1,276,791 | 3,923,706 |

EXHBIT C ; page 5

**ARKLAND INVESTMENT ,LLC**
**PROPOSED CASH FLOW PROJECTION (Exercise of Purchase Option)**
**FROM MAY, 2010 TO AUGUST , 2011**

(a) Loan $1,500,000 less 1% fee. Loan matures in Aug, 2011.
(b) Envision Foods,LLC offered to purchase Arkland's ownership at $750,000
    Envision Foods,LLC will pay $400,000 upon confirmation of the plan and $50,000/month for 7 months.
© Proceed from  Sale of 2700 Wilshire Blvd. Property  Sale closing in August,2011.
    Sales Price ($12,000,000) less 3% commission and appx $50,000 in selling expenses.
(d)Collection of Loan to Jaewoo Kim  Net $3,033,915(Gorss $4,975,215 less $1,941,300)
    Assuming Collection in August, 2011
(e) Adequate Protection Payment of $21,600 per month.
    Paydown $1 million with financing of $1.5 million
(f) Assuming no deficiencies from Note held by Sixth & Virgil,LLC
(g) 10% per annum on $1.5 million financing
(h) Payment to Unsecured creditors (only outsiders) Total payment of $5,700,000
    $750,000 will be paid upon financing.  The balance will be paid upon sale of 2700 Wilshire building&collection of Kim's loan.
(i) Property Taxes due $ 124,150 and Franchise Fee of $15,947.
    Taxes will be paid out of $1.5 mil financing to reduce excessive financing charges and penalties.

**EXHIBIT C ; page 6**

# EXHIBIT D

# ARKLAND INVESTMENT, LLC
## BALANCE SHEETS
### APRIL 17, 2010

## ASSETS

| | | | | |
|---|---|--:|---|--:|
| **Current Assets :** | | | | |
| Cash and cash equivalents | $ | 758,335 | | |
| Trade Accounts Receivable-Rent | $ | 8,970 | | |
| Checks on hold-Property Taxes | $ | 159,407 | | |
| Due from members | $ | 4,975,215 | | |
| Loan Receivable-Wil-Tower,LLC | $ | 1,609,800 | | |
| Total Current Assets | | | $ | 7,511,727 |
| | | | | |
| **Investment in Affiliated Companies :** | | | | |
| Investment in Envision Foods,LLC | $ | 1,810,926 | | |
| Investment in Wil-Tower,LLC | $ | 4,905,000 | | |
| Total Investment in Affiliated Companies | | | $ | 6,715,926 |
| | | | | |
| **Property and Fixtures :** | | | | |
| Building-2700 Wilshire Blvd., Los Angeles | $ | 10,686,100 | | |
| Less; Accumulated Depreciation | $ | (16,991) | | |
| Net Property and Fixtures | | | $ | 10,669,109 |
| | | | | |
| Total Assets | | | $ | 24,896,762 |

"EXHIBIT D"

# ARKLAND INVESTMENT, LLC
## BALANCE SHEETS
### APRIL 17, 2010

### LIABILITIES AND EQUITY

| | | |
|---|---:|---:|
| **Current Liabilities :** | | |
| Accounts Payable - Trade | $ - | |
| Taxes Payable - Franchise Taxes | $ 15,947 | |
| Taxes Payable - Property Taxes | $ 283,557 | |
| Total Current Liabilities : | | $ 299,504 |
| | | |
| **Pre-Petition Liabilities (Secured) :** | | |
| Note Payable-Young S Cho | $ 6,617,692 | |
| Note Payable -Sixth and Virgil, LLC | $ 11,614,134 | |
| Note Payable-Mark VII | $ 381,375 | |
| Total Pre-Petition Liabilities (Secured) | | $ 18,613,201 |
| | | |
| **Pre-Petition Liabilities (Unsecured) :** | | |
| Loan-Emil Joseph | $ 545,000 | |
| Payable-Niemann Properties | $ 365,000 | |
| Payable-Pilgrim School | $ 180,000 | |
| Payable-Park&Velayos | $ 366,286 | |
| Payable-Christopher Joseph&Assoc | $ 110,000 | |
| Payable-Corbel Architects | $ 49,500 | |
| HIC Acceptance, LLC | $ 3,500,000 | |
| Loan-HMGP, Inc. | $ 970,000 | |
| Loan-Alexandra Kim | $ 250,000 | |
| Loan-Stuart Whang | $ 550,000 | |
| Loan-David Chang | $ 264,864 | |
| Loan-Chuck Yea | $ 273,722 | |
| Loan-General Tools, Inc. | $ 910,000 | |
| Loan-Wil-Cren, LLC | $ 1,031,300 | |
| Total Pre-Petition Liabilities (Unsecured) | | $ 9,365,672 |
| | | |
| Other Liabilities-Lease Deposit(wi spa, LLC) | | $ 110,000 |
| Total Liabilities | | $ 28,388,377 |

"EXHIBIT D"

**ARKLAND INVESTMENT,LLC**

**BALANCE SHEETS**

**APRIL 17,2010**

| Equity : | | | | |
|---|---|---|---|---|
| Equity as of December 21,2009 | $ | (3,915,072) | | |
| Current Period Earnings | $ | 423,457 | | |
| Total Equity | | | $ | (3,491,615) |
| Total Liabilities and Equity | | | $ | 24,896,762 |

"EXHIBIT D"

**ARKLAND AINVESTMENT,LLC**
**INCOME AND EXPENSES STATEMENT**
**FROM DECEMBER 21,2009 TO APRIL17,2010**

REVENUE :

| | | | |
|---|---|---|---|
| Rental Income-wi spa,LLC | $ | 398,130 | |
| Dividend from Envision Foods,LLC | $ | 27,091 | |
| Other Income | $ | - | |
| Total Revenue | | | $ 425,221 |

EXPENSES :

| | | | |
|---|---|---|---|
| US Trustee Fees | $ | 650 | |
| Legal Expenses | $ | 753 | |
| Other Operating Expenses | $ | 361 | |
| Total Expenses | | | $ 1,764 |

| | | |
|---|---|---|
| Net Income for the Period | | $ 423,457 |

EXHIBIT D

# ARKLAND INVESTMENT,LLC
## STATEMENT OF CASH FLOWS
## FROM DECEMBER 21,2009 TO APRIL17,2010

| | | | | |
|---|---|---:|---|---:|
| Cash flow from operating activities : | | | | |
| Net Income | | | $ | 423,457 |
| Adjustment to reconcile net income to net cash | | | | |
| Decreasae in Rent Receivable(Collection of past-due rent) | $ | 334,666 | | |
| Increase in accounts Payable | $ | - | | |
| Net Cash Provided by operating activities | | | $ | 334,666 |
| | | | | |
| Net cash used in investing actitivities | | | $ | - |
| | | | | |
| Net Cash provided by financing actitivities | | | $ | - |
| | | | | |
| Net Increase(decrease) in cash and cash equivalents | | | $ | 758,123 |
| | | | | |
| Cash and Cash Equivalents on December 21,2009 | | | $ | 212 |
| | | | | |
| Cash and Cash Equivalents on April 17,2010 | | | $ | 758,335 |

EXHIBIT  D

December 31, 2009

ASSETS                                         "Unreconciled"

| Current Assets | | |
|---|---:|---:|
| Checking-UCB | $ 311.02 | |
| Checking-Wilshire State Bank | (98.28) | |
| Accounts Receivable | 361,652.47 | |
| Loan-Jaewoo Kim | 4,975,215.00 | |
| Loan-Wil-Tower,LLC | 1,609,800.00 | |
| Investment-Wil-Tower,LLC | 4,905,000.00 | |
| | | |
| Total Current Assets | | 11,851,880.21 |
| | | |
| Property and Equipment | | |
| Building-2700 Wilshire | 3,180,660.00 | |
| Pre-Dev. Expenses-2700 | 83,900.00 | |
| Land-2700 Wilshire | 7,421,540.00 | |
| Accum. Depreciation - Building | (16,991.00) | |
| | | |
| Total Property and Equipment | | 10,669,109.00 |
| | | |
| Other Assets | | |
| Investment in Envision Foods | 1,810,926.00 | |
| | | |
| Total Other Assets | | 1,810,926.00 |
| | | |
| Total Assets | $ | 24,331,915.21 |

LIABILITIES AND CAPITAL

| Current Liabilities | | |
|---|---:|---:|
| Loan-Emil Joseph | $ 517,500.00 | |
| Loan from ?? | 41,500.00 | |
| Loan-Chuck Yea | 273,722.00 | |
| Loan-Mark VII | 367,500.00 | |
| Loan-Stuart Whang | 550,000.00 | |
| Loan-David Chang | 264,864.06 | |
| Loan-General Tool | 910,000.00 | |
| Loan-Alex Kim | 241,336.00 | |
| Loan-Asia Live | 42,425.00 | |
| Loan-Wil-Cren | 1,031,300.00 | |
| Loan-HMGP | 959,178.00 | |
| | | |
| Total Current Liabilities | | 5,199,325.06 |
| | | |
| Long-Term Liabilities | | |
| Loan Payable-UCB | 6,270,000.00 | |
| Loan Payable-Universal Bank | 11,250,000.00 | |
| Deferred Revenue | 1,190,795.37 | |
| Security Deposit-Hue Spa | 110,000.00 | |
| | | |
| Total Long-Term Liabilities | | 18,820,795.37 |
| | | |
| Total Liabilities | | 24,020,120.43 |
| | | |
| Capital | | |
| Retained Earnings | (429,920.27) | |
| Net Income | 741,715.05 | |
| | | |
| Total Capital | | 311,794.78 |

Unaudited - For Management Purposes Only      "Exhibit D"

Arkland Investment (08-09)

Balance Sheet

December 31, 2009

| | | |
|---|---|---|
| Total Liabilities & Capital | $ | 24,331,915.21 |

Unaudited - For Management Purposes Only

"Unreconciled"

Ashland Investments (08-09)

Income Statement

For the Twelve Months Ending December 31, 2009

| | Current Month | | Year to Date | |
|---|---|---|---|---|
| **Revenues** | | | | |
| Commission Income | $ 0.00 | 0.00 | $ 0.00 | 0.00 |
| Appraisal Fees | 0.00 | 0.00 | 0.00 | 0.00 |
| Referral Fees | 0.00 | 0.00 | 0.00 | 0.00 |
| Brokers' Escrow Fees | 0.00 | 0.00 | 0.00 | 0.00 |
| Mortgage Interest Earned | 0.00 | 0.00 | 0.00 | 0.00 |
| Property Management Fees | 0.00 | 0.00 | 0.00 | 0.00 |
| Mortgage Principal Received | 0.00 | 0.00 | 0.00 | 0.00 |
| Rental Income | 96,000.00 | 3.84 | 96,000.00 | 3.84 |
| Income-Hue Spa | 481,652.47 | 19.26 | 481,652.47 | 19.26 |
| Interest Income | 1,076,986.00 | 43.06 | 1,076,986.00 | 43.06 |
| Other Income | (503,074.00) | (20.12) | (503,074.00) | (20.12) |
| Dividends from Envison Foods | 99,332.50 | 3.97 | 99,332.50 | 3.97 |
| Income for Debt Forgiven | 1,250,000.00 | 49.98 | 1,250,000.00 | 49.98 |
| Fee Refunds | 0.00 | 0.00 | 0.00 | 0.00 |
| Fee Discounts | 0.00 | 0.00 | 0.00 | 0.00 |
| Total Revenues | 2,500,896.97 | 100.00 | 2,500,896.97 | 100.00 |
| | | | | |
| **Cost of Sales** | | | | |
| Cost of Sales | 0.00 | 0.00 | 0.00 | 0.00 |
| Cost of Sales-Salaries and Wag | 0.00 | 0.00 | 0.00 | 0.00 |
| Total Cost of Sales | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | | |
| Gross Profit | 2,500,896.97 | 100.00 | 2,500,896.97 | 100.00 |
| | | | | |
| **Expenses** | | | | |
| Default Purchase Expense | 0.00 | 0.00 | 0.00 | 0.00 |
| Advertising Expense | 0.00 | 0.00 | 0.00 | 0.00 |
| Architect Fees | 2,000.00 | 0.08 | 2,000.00 | 0.08 |
| Auto Expenses | 0.00 | 0.00 | 0.00 | 0.00 |
| Bad Debt Expense | 0.00 | 0.00 | 0.00 | 0.00 |
| Bank Charges | 5,096.54 | 0.20 | 5,096.54 | 0.20 |
| Cash Over and Short | 0.00 | 0.00 | 0.00 | 0.00 |
| Charitable Contributions Exp | 1,000.00 | 0.04 | 1,000.00 | 0.04 |
| Commissions and Fees Exp | 125.00 | 0.00 | 125.00 | 0.00 |
| Depreciation Expense | 0.00 | 0.00 | 0.00 | 0.00 |
| Design and Graphic | 520.00 | 0.02 | 520.00 | 0.02 |
| Employee Benefit Programs Exp | 0.00 | 0.00 | 0.00 | 0.00 |
| Entitlement Fees etc | 25,935.28 | 1.04 | 25,935.28 | 1.04 |
| Engineering Expenses | 1,800.00 | 0.07 | 1,800.00 | 0.07 |
| Income Tax Expense | 0.00 | 0.00 | 0.00 | 0.00 |
| Insurance Expense | 0.00 | 0.00 | 0.00 | 0.00 |
| Interest Expense | 1,626,271.68 | 65.03 | 1,626,271.68 | 65.03 |
| Laundry and Cleaning Exp | 0.00 | 0.00 | 0.00 | 0.00 |
| Legal and Professional Expense | 37,817.00 | 1.51 | 37,817.00 | 1.51 |
| Licenses Expense | 0.00 | 0.00 | 0.00 | 0.00 |
| Loss on NSF Checks | 0.00 | 0.00 | 0.00 | 0.00 |
| Maintenance Expense | 0.00 | 0.00 | 0.00 | 0.00 |
| Meals and Entertainment Exp | 660.00 | 0.03 | 660.00 | 0.03 |
| Notary Public | 40.00 | 0.00 | 40.00 | 0.00 |
| Office Expense | 9,363.42 | 0.37 | 9,363.42 | 0.37 |
| Payroll Tax Expense | 0.00 | 0.00 | 0.00 | 0.00 |
| Project Management Fee | 25,000.00 | 1.00 | 25,000.00 | 1.00 |
| Other Taxes | 353.00 | 0.01 | 353.00 | 0.01 |
| Postage Expense | 0.00 | 0.00 | 0.00 | 0.00 |
| Professional Development | 0.00 | 0.00 | 0.00 | 0.00 |

For Management Purposes Only          "Exhibit D "

Colburn Investment Co. 0903

Income Statement

For the Twelve Months Ending December 31, 2009

|  | Current Month | | Year to Date | |
|---|---|---|---|---|
| Rent or Lease Expense | 17,200.00 | 0.69 | 17,200.00 | 0.69 |
| Repairs Expense | 0.00 | 0.00 | 0.00 | 0.00 |
| Spa-related Expenses | 0.00 | 0.00 | 0.00 | 0.00 |
| Supplies Expense | 0.00 | 0.00 | 0.00 | 0.00 |
| Telephone Expense | 0.00 | 0.00 | 0.00 | 0.00 |
| Salaries Expense | 0.00 | 0.00 | 0.00 | 0.00 |
| Wages Expense | 6,000.00 | 0.24 | 6,000.00 | 0.24 |
| Travel Expense | 0.00 | 0.00 | 0.00 | 0.00 |
| Utilities Expense | 0.00 | 0.00 | 0.00 | 0.00 |
| Other Expense | 0.00 | 0.00 | 0.00 | 0.00 |
| Purchase Disc-Expense Items | 0.00 | 0.00 | 0.00 | 0.00 |
| Gain/Loss on Sale of Assets | 0.00 | 0.00 | 0.00 | 0.00 |
| Total Expenses | 1,759,181.92 | 70.34 | 1,759,181.92 | 70.34 |
| Net Income | $ 741,715.05 | 29.66 | $ 741,715.05 | 29.66 |

# EXHIBIT E

## XII. ASSETS AND LIABILITIES  (AS OF APRIL17 ,2010)

| A. ASSETS : | FMV |
|---|---|
| Cash | 758,335 |
| Rent Receivable | 8,970 |
| Checks on hold-Property Taxes | 159,407 |
| Loan-Jaewoo Kim | 4,975,215 |
| Loan Receivable-Wil-Tower,LLC | - |
| Investment in Envision Foods,LLC | 750,000 |
| Investment in Wil-Tower,LLC | - |
| 2700 Wilshire Building | 11,750,000 |
| **Total Assets** | **$        18,401,927** |
| | |
| B. LIABILITIES : | |
| 1. Tax Claims ; | |
|    Franchise Tax Board | 15,947 |
|    County of LA-Property Taxes | 283,557 |
| **Total Tax Claims** | **$            299,504** |
| 2. Secured Claims : | |
|   Loan-Youg S Cho | 6,617,692 |
|   Loan-Sixth&Virgil,LLC | - |
|   Loan-Mark VII | 381,375 |
| **Total Secured Claims** | **$          6,999,067** |
| 3. Unsecured Claims-outsider | |
|   Niemann Construction,Inc. | 910,000 |
|   Christopher Joseph&Assoc | 127,921 |
|   Corbel Architects | 49,500 |
|   HIC Acceptence,LLC | 3,500,000 |
|   Emil&Mary Joseph | 545,000 |
|   Park&Velayos | 366,286 |
|   Pilgrim School | 180,000 |
| **Total Unsecured Cr** | **$          5,678,707** |
| | |
| **Total Liabilities before Insider's claims** | **$        12,977,278** |
| | |
| **Inisder's Claim** | **$          4,249,886** |
| | |
| **Total Liabilities** | **$        17,227,164** |
| | |

**EXHBIT   E**