TERESA A. BLASBERG (State Bar No. 105473)
BLASBERG & ASSOCIATES
526 N. Juanita Ave
Los Angeles, California 90004
Telephone: (213) 239-0364
Facsimile: (323) 661-2940

**Attorneys for Arkland Investment, LLC**

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 2:09-bk-46058-AA |
| ARKLAND INVESTMENT, LLC, | RESPONSE TO OBJECTIONS TO ADEQUACY OF DISCLOSURE STATEMENT |
| Debtor. | |
| | Date: May 26, 2010<br>Time: 10:00 a.m.<br>Place: Courtroom 1375<br>255 E. Temple Street, Los Angeles, CA 90012 |

Arkland Investment, LLC (the "Debtor") responds as follows to the objections to the adequacy of the Debtor's Plan and Disclosure Statement:[1]

**Objections Related to Confirmation Issues by Sixth and Virgil and Whang and Cho**

Sixth and Virgil objects that there are no grounds for the subordination of its lien; concurrently herewith, the Debtor is filing an adversary proceeding against Sixth and Virgil, and will file a motion to estimate Sixth and Virgil's claim at $0 prior to confirmation. The issue is a simple one. In its proof of claim #13 and in footnote 2 of the objection, Sixth and Virgil admits that it is the holder of a "deed of trust on other real property", i.e., property commonly known as 601 S.

---

[1] At Los Angeles County's request, the Debtor has agreed to amend the description of the Class One Claim for property taxes to be consistent with the county's proof of claim filed after the disclosure statement was filed.

1

Commonwealth in Los Angeles (the "Sixth and Virgil Property").[2] Until an order was entered on March 20, 2010 dismissing the case, the Sixth and Virgil Property was the subject of a chapter 11 proceeding in which the holder of record, HSP Investment, Inc., was the Debtor. HSP Investment, Inc. was an entity newly formed by Soon Pil Hong, who had foreclosed a junior lien on the property (then owned by the Debtor) in October of 2009.

On March 8, 2010, HSP Investment, LLC[3] recorded a deed of the Sixth and Virgil Property to an entity called 2700 Wilshire, LLC ("2700 Wilshire"), formed by Stuart Whang on the same day he formed Sixth and Virgil, and also identifying Mr. Whang as its manager. Apparently realizing that the pre-dismissal transfer was probably void, on April 14, 2010, a new identical deed from HSP Investment, LLC to 2700 Wilshire was recorded. Although the filings with the California Secretary of State do not disclose the membership of 2700 Wilshire, the Debtor expects to be able to prove that the owners of Sixth and Virgil and 2700 Wilshire are one and the same, and that Sixth and Virgil therefore has complete control over the Sixth and Virgil Property, which has an appraised value as of March 29, 2010 of $12.8 million.

Sixth and Virgil has attempted to conceal the fact that it has actually acquired the collateral through the use of a different entity, nor is the mortgage transfer tax disclosed on the deed from which the consideration paid for the Sixth and Virgil Property (if any) can be ascertained. The Debtor believes that if Sixth and Virgil had paid anything for the property, the price would not have been concealed, and it is therefore likely that Sixth and Virgil's claim of $11.6 million has been fully satisfied by what was in effect a secret collusive foreclosure of collateral securing the Debtor's note. Whether the result is arrived at based upon principles of marshaling, equitable subordination or a simple factual finding that the claim has been satisfied, Sixth and Virgil cannot keep property worth $12.8 million and still assert an $11.6 million claim against the Debtor's estate. Yet most of Sixth and Virgil's confirmation related objections depend upon the assumption that the value of the

---

[2] The proof of claim also concedes that the amount of Sixth and Virgil's secured claim remains "to be determined" due to the existence of other collateral securing the debt.

[3] It is unclear title became vested in HSP Investment, LLC, as HSP Investment, Inc.'s schedules state that it is the owner of the Sixth and Virgil Property.

1    collateral it now controls does not count for purposes of plan confirmation.[4]

2    Most preposterous is Sixth and Virgil's assertion that the plan has not been proposed in good faith because "it submitted the instant Disclosure Statement (without a Plan) on April 19, 2010" which date "curiously coincides with the day that the Debtor's exclusivity period pursuant to Section 1121(b) of the Bankruptcy Code was set to expire."  Were compliance with the Court's procedures by use of the Court's mandatory forms and use of the exclusivity period afforded to debtors by the Bankruptcy Code to constitute "bad faith", no chapter 11 plan could ever be confirmed.

    The confirmation related objections of Stuart Whang and Young Cho (the "Whang/Cho" Objection") fare no better.  First, the Debtor notes that these objectors are owners of Sixth and Virgil, LLC, and as with the motion to appoint a chapter 11 trustee, there is an unnecessary and burdensome multiplication of pleadings to which the Debtor must respond.   The Whang/Cho Objection also asserts that the plan is not feasible, without acknowledging that the source of this requirement is 11 U.S.C. §1129(a)(11), which provides: "Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, **unless such liquidation** or reorganization **is proposed in the plan." [Emphasis added].**  The proceeds to be obtained in a liquidation need not be certain, so long as there are sufficient funds available on the effective date to make payments required by the Bankruptcy Code to be paid at that time, and the proceeds are distributed in accordance with the priorities mandated by the Code.

    The Debtor also does not see how the plan violates the absolute priority rule, when the plan proposes to distribute the proceeds of collateral to secured creditors, to the extent unsecured creditors may receive payment before secured creditors, such payment is only from unencumbered assets, and the Debtor's members are to receive their pro rata share of estate assets remaining after all claims in senior classes are paid in full.  See Plan and Disclosure Statement, p. 19.  The Whang/Cho objection asserts that "the proposal to pay junior creditors without satisfying senior

---

[4] These objections include "unfair discrimination" and violation of the absolute priority rule and failure to provide Sixth and Virgil with the "indubitable equivalent" of its claim.  However, nowhere in the plan and disclosure statement does the Debtor purport to change the amount of Sixth and Virgil's debt, the interest rate or any of the other terms of the loan; the Debtor simply proposes that Sixth and Virgil be prevented from receiving a $12.8 million windfall.  As for feasibility, the plan provides for liquidation of the Debtor's assets, which satisfies 11 U.S.C. §1129(a)(11), which excepts liquidating plans from a feasibility showing.

3

secured claims" violates 11 U.S.C. §1129(b)(2) shows a fundamental misunderstanding of that Code section. The "fair and equitable" requirement is applied by class of claims, and has a different meaning with respect to secured and unsecured claims; there is no requirement that secured claims be paid in full first, so long as the proceeds of collateral are not being used to pay unsecured claims before the claims secured by the collateral are paid. The only delay in satisfying the secured claims from the sale of the collateral results from the time required to market the property to obtain the price called for by the plan, and only if the proposed purchaser does not exercise its option. The secured creditors are adequately protected in the meantime by monthly payments in the case of the Young Cho claim acquired from East West Bank, and in the case of Sixth and Virgil, by its having a claim that has been either satisfied or at least fully secured by the Sixth and Virgil Property.

Finally, the assertion that the Debtor is "using the plan to circumvent the post-petition lending requirement of 11 U.S.C. § 364" is ridiculous. Section 364 governs post-petition, pre-confirmation borrowing; it does not purport to apply to post-confirmation borrowing pursuant to a plan. Moreover, as stated in the disclosure statement at page 23, "The Court must make certain findings of fact before approving the aforementioned provisions [including the proposed post-petition unsecured loan] as part of the Plan. The Proponent will request that the Court make the appropriate findings at the confirmation hearing, based upon evidence submitted in support of the confirmation motion." Any objections to the loan that a party may have can be raised at confirmation, and there is simply no basis for the Whang/Cho objection's assertion that a separate motion and a hearing in addition to the confirmation hearing is required to permit the Debtor to incur post-confirmation unsecured debt as a means of performing its plan.

**The "Adequate Information" Objections**

**A.    The HIC Acceptance, LLC ("HIC") Objection**

The HIC Acceptance objection is based solely upon a question about the amount of its claim included in the plan. HIC has filed proof of claim #7 in the amount of approximately $5 million, which is based upon the Debtor' guaranty. However, the claim fails to take into account the value of foreclosed property that secured the guaranteed debt. As reflected in HIC's own complaint against the Debtor filed in Los Angeles Superior Court on or about December 2, 2009, the post-

4

foreclosure deficiency for which the Debtor could be liable is at most approximately $3.7 million. The Debtor has commenced negotiations with HIC for a consensual resolution of the correct amount of the claim.

**B.    The Sixth and Virgil, LLC and Whang/Cho Objections**

First, throughout the objection, Sixth and Virgil claims that the Debtor failed to file a plan with its disclosure statement. However, this Court's procedures require the use of the specific combined plan and disclosure statement form employed in this case, which states on page 2 that "The document you are reading is both the Plan of Reorganization ("Plan") and the Disclosure Statement". In addition, the form is structured to require that particular information appear in a specific place in the form; in many cases, the objection claims that required information is missing from the disclosure statement, when the information has merely been placed in the proper location in the form and exhibits.

Secondly, for the most part, the Sixth and Virgil objection manufactures purported confusion where none exists, primarily by insisting that information provided in one section of the document must in all cases be identical to information provided in another section, despite the fact that the information relates to different times and purposes. For example, in the first part of Section VII describing the Debtor's past business activities, the disclosure statement states at page 6 that the Debtor "purchased" a 36.6% interest in Envision Foods, not that it still owns this interest. In the latter portion of the Section on page 8 dealing with the Debtor's present business activities, the reference to the current ownership interest of 20.71% is correct, the Debtor having sold a portion of its interest as disclosed in the Debtor's Statement of Financial Affairs. Similarly, Exhibit "D" is supposed to consist of the Debtor's financial statements which are prepared using the book value of the Debtor's assets, while Exhibit "E" is required to include the fair market value of assets; it is because these figures usually differ that the Court's form requires separate exhibits.

The Debtor did not locate any specific objections in the Whang/Cho objection that did not also appear in the Sixth and Virgil objection. Therefore, in the interest of economy, the specific objection by these parties are addressed below based upon the Sixth and Virgil pleading in the order they appear in the objection:

5

1

| Objection Location | Response |
|---|---|
| Page 7, line 11 - page 9, line 19 | The approved plan and disclosure statement form calls for a "brief summary of the dates and circumstances that led Debtor to file bankruptcy." The objection appears to seek information concerning the Debtor's entire history in detail going back to 2004, regardless of its relevance to the plan. This information was discussed in detail in the Debtor's response to Stuart Whang's Motion for Appointment of a chapter 11 trustee, and the Debtor will add such additional background information from that document as the Court may require. |
| Page 9, line 20 - page 10, line 2; page 10, lines 6-8 | The following information will be added regarding the value of the Wilshire Property - the value was determined based upon the income the property generates; the calculation attached hereto as Exhibit "1" will be added to Exhibit "E" to the disclosure statement. |
| Page 10, lines 10-24 | The following information will be added regarding the value of the Envision Foods Interest - The current fair market value for purposes of disposition under the plan is based upon an appraisal obtained by Mark VII which it has agreed to provide prior to the disclosure statement hearing. This information was not available at the time at the time the Debtor prepared its Schedule B, and therefore the scheduled value was an estimate. The statement on page 6 of the disclosure statement that the Debtor initially acquired a 36.6% interest in Envision Foods is correct, as is the statement on page 8 that the Debtor now owns 20.71%. The disposition of the difference was disclosed on the Debtor's Statement of Financial Affairs, and the current dividend (as opposed to the historical dividend referred to in the objection) is disclosed in the exhibits to the disclosure statement. The disclosure statement states that David Chang holds legal title to the Envision Food interest in trust for the Debtor because the statement is true. |
| Page 10, line 25 - page 11, line 6 | The Exhibit "D" financial statement contains the book value of the Wil-Tower, LLC asset, which is based upon the amount invested; the fair market value of the asset appears on Exhibit "E" as $0 because the property owned by that entity was foreclosed as explained on page 7 of the disclosure statement. |
| Page 11, lines 7-11 | Exhibit "E" is dated as of April 17, 2010; there is nothing inconsistent about saying that $8,970 was due as of that date (this is an unpaid late charge from January 2010), and that $650,000 will be collected over the following 8 months. |
| Page 11, lines 11-14 | Exh. "D" contains financial statements dated as of 12/31/09; the $361,652 rent receivable reflected on the Exhibit was collected in January 2010. Therefore, the information presently contained in the disclosure statement is correct. |

6

| | | |
|---|---|---|
| 1 2 3 4 | Page 11, lines 15-18 | Section XII, p. 20 calls for the fair market value of the Debtor's assets, while Section XIV on page 21 is supposed to include the chapter 7 liquidation value. The disclosure statement explains at page 21 that "the liquidation value of the Debtor's real property . . . is less than the fair market value . . . because there is a more limited market for single-tenant properties, and the marketing period is likely to be shorter in a chapter 7 case." |
| 5 6 7 | Page 11, lines 19-21 | As a controlling member of Wi Spa, Sixth and Virgil's manager (Stuart Whang) already knows that the Debtor is holding checks from its tenant Wi Spa payable to Los Angeles County for property taxes. See also Plan and Disclosure Statement, p. 12 (treatment of Class One Claim). |
| 8 9 10 | Page 11, lines 21-23 | It is appropriate to list assets and claims separately, and the payment of claims of all potential avoidance action defendants is stated to be subject to 11 U.S.C. §502(d), providing for the disallowance of claims held by recipients of avoidable transfers, unless and until such transfers are returned to the estate. See Plan and Disclosure Statement, pp. 15-18. |
| 11 12 13 | Page 11, lines 24-27 | All litigation will be delegated to a representative selected by the Creditors' Committee; the Debtor will include in the disclosure statement all potential causes of action the committee determines should be pursued. |
| 14 15 | Page 11, line 27 - page 12, line 5 | Section XII.C. dealing with the fair market value of the estate's assets is only required to state a number in the Court's form. Details as to how the number is arrived will be added to Exhibit "E", as explained above. |
| 16 17 | Page 12, lines 6-13 | It is clear throughout the disclosure statement that Debtor's assets are to be liquidated under the plan and the proceeds distributed according to the priorities required by the Bankruptcy Code and identified in the plan. |
| 18 19 20 21 22 | Page 12, line 14 - page 13, line 9 | The objection confuses post-confirmation management of the Debtor pending liquidation with post-confirmation management of the estate.  As stated in Section XV.A.5 of the disclosure statement, Mr. Chang's post-confirmation involvement as the Debtor's manager can only determined in relation to the role of the Multi-Purpose Post-Confirmation Agent who is to be selected by the Creditors' Committee. Mr. Chang will have no involvement with any estate cause of action in which he could potentially be a defendant. |
| 23 24 25 26 | Page 13, line 10 - page 14, line 17. | The information requested will be included in the Plan and Disclosure Statement as Exhibit "F", which will include a signed letter of intent, and proof of financial ability to perform.  The Debtor will provide these documents prior to the disclosure statement hearing.  The basis for the value of the property is discussed above. |

27
28

| | | |
|---|---|---|
| Page 14, lines 18-22 | The Debtor's Schedule A discloses that the Universal Bank claim (now held by Sixth and Virgil) is secured by non-estate property;. In addition, the mechanics lien claims that were scheduled as in existence as of the petition date have been settled by Wi Spa as required by the terms of the lease and demanded by the Debtor, as Sixth and Virgil's manager Stuart Whang well knows. |
| Page 14, line 23 - page 15, line 1 | Note 33 to the "Reading Guide" to the approved plan and disclosure statement form provides: "After the Court has approved the Disclosure Statement, the Proponent should insert a specific date as the Effective Date, which date should be on or after the date set for hearing on the motion to confirm the Plan." Thus, the form contemplates that this date will not be set until the schedule for plan confirmation is known. |
| Page 15, lines 1-16 | Exhibit C sets forth in detail the dates of payments under the various scenarios and the sources of the funds for such payments. The Debtor will such additional information as the Court may direct. |
| Page 15, lines 17-28 | The Creditors' Committee was only appointed in April, shortly before the Debtor's exclusivity period was due to run. The Debtor will include in the disclosure statement all causes of action the committee wishes to pursue, and will affirmatively assist the committee in identifying such causes of action. |
| Page 16, lines 11-19 | It is apparent from the face of the Young Cho Claim No. 11, that it was acquired by assignment from East West Bank, which was scheduled as the holder of the claim. It is a mystery to the Debtor why counsel for Sixth and Virgil does not know that one of its members acquired this first priority secured claim. |
| Page 16, lines 20-26 | The claims register total of $30,213,862.87 of claims cited in the objection includes three duplicate claims filed by Stuart Whang in the amount of $550,000 each (Claims 4, 10 and 12), two identical claims filed by Universal Bank and Sixth and Virgil, LLC for the same debt for $11,614,133 each (Claims 9 and 13), and two duplicate claims filed by HIC Acceptance for approx. $5 million each. Taking these duplications into account, the actual filed claims, even without considering substantive objections, total $12,499,730, which is substantially less than the liabilities identified in the disclosure statement. |
| Page 16, lines 25-26 | The bar date for governmental claims has only recently passed, and the effective date of the plan will not determined until the confirmation hearing is scheduled. The Debtor will comply with such claim objection schedule as the Court may fix. |
| Page 17, lines 1-9 | There is no requirement that a disclosure statement provide any more detail concerning the basis for a particular claim than the Debtor has provided. Any creditor can review the Debtor's schedules and filed proofs of claim and file their own objections. A disclosure statement that provided every detail of every claim would amount to hundreds of pages. |

8

| | |
|---|---|
| Page 17, lines 10-20 | Administrative claims cannot be accurately determined until they are allowed, and must necessarily be estimated. Brokers fees will not be incurred until the property is sold post-confirmation, and are reflected in the Exhibit C projections. |
| Page 17, lines 21-25 | The disclosure statement does not identify pending litigation against the debtor, because there is no such litigation that has not been stayed. If there are pending postpetition lawsuits against the Debtor, the Debtor would like to know about such violations of the automatic stay. |
| Page 18, lines 1-6 | The declaration included in the approved disclosure statement will bear Mr. Chang's signature; the Debtor will include such additional information in the declaration as the Court may require. |
| Page 18, lines 7-18 | The Debtor's performance during the case is disclosed in the Exhibit "D" financial statements. If the Court finds that additional information about the consensual order or the motion for a chapter 11 trustee is required, the Debtor will add such information. |
| Page 18, line 19 - page 19, line 11 | As stated above, the objection claims is comparing apples and oranges and expecting the figures provided for different purposes to be the same. The fair market value of the Debtor's assets is different from the chapter 7 liquidation values for the reasons stated in the disclosure statement. |

**Conclusion**

The only material items missing from the disclosure statement require the input of third parties including: (1) material from the proposed lender/purchaser, (2) input from the Committee concerning avoidance actions it wishes to pursue and its selection of a multi-purpose estate representative; and (3) valuation of the Envision Foods interest from Mark VII. The Debtor is using its best efforts to have this material available prior to the disclosure statement hearing.

Dated: March 19, 2010                                   BLASBERG & ASSOCIATES


                                                        By: /s/Teresa A. Blasberg
                                                            Teresa A. Blasberg
                                                        Attorneys for Arkland Investment, LLC

## VALUATION OF 2700 WILSHIRE BUILDING

| | | |
|---|---|---:|
| **MONTHLY RENT (NNN)** | $ | 92,700 |
| | | |
| **ANNUAL RENT (NNN)** | $ | 1,112,400 |
| | | |
| **VALUE BASED ON 9% CAP** | $ | 12,360,000 |
| **SINGLE TENANT DISCOUNT (5%)** | $ | (618,000) |
| **VALUE OF 2700 WILSHIRE BUILDING** | $ | 11,742,000 |
| | | |
| **LISTED PRICE OF 2700 WILSHIRE BLDG.** | $ | 11,750,000 |

**(NOTE)**
**VALUE OF 2700 WILSHIRE BUILDING WAS ESTIMATED BASED ON 9% CAPITALI-
ZATION WITH 5% DISCOUNT DUE TO A SINGLE TENANT RISK.**